Craigmiles *v.* Hays.

WALTER CRAIGMILES *v.* JAMES A. HAYS *et al.*

1. CHANCERY PLEADINGS AND PRACTICE. *Attachment bill. Agreement for delay.* If a creditor expressly agree, upon sufficient consideration, to take no step to collect his debt within a given time, he cannot maintain an attachment bill thereon filed within the time.

2. LEASE. *Lien for payment of rent upon crop.* Where, in a lease of land for two years at a stipulated rate for each year, a lien for the payment of the rent is given "on the present year's crop, and a lien on all the crops grown on the place," the rent of the first year, as well as of the second year, will be a lien on the second year's crop, and may be enforced by attachment of the crop.

3. ATTACHMENT. *Grounds for. Allegation.* A charge that a debtor hastily removed his live stock to another State for the purpose of hindering and delaying complainant in the collection of his debts, is not equivalent to the requirement of the statute that he has removed, or is removing himself or his property from the State.

4. CHANCERY PLEADINGS AND PRACTICE. *Relief under general prayer.* A judgment creditor, who seeks primarily to set aside a trust assignment by his debtor as fraudulent, may, upon the general prayer for relief, have a foreclosure of the trust assignment so as to reach the surplus, if any, after the payment of the trust expenses and debts.

FROM BRADLEY.

Appeal from the Chancery Court at Cleveland. W. M. BRADFORD, Ch.

C. F. BATES for complainant.

J. H. GAUT, S. P. GAUT and J. N. AIKEN for defendant.

COOPER, J., delivered the opinion of the court.

On the 26th of April, 1879, the complainant Craig-miles, who had a trust deed on the land of Hays to secure a note of $4,000, with ten per cent. interest, entered into a contract with Hays, by which Hays conveyed to him the land in fee for a recited consideration of $5,000, to be paid partly in a prior mortgage debt, and partly as a credit on his own debt, and Craigmiles gave Hays a written defeasance to reconvey upon the payment within two years of both debts, and leased to him the land for two years at an annual rental of $700. One stipulation of the defeasance was that Craigmiles agreed not to press Hays for the balance of his debt until after the expiration of said two years, and to "take no steps to collect said balance within the time aforesaid." The lease from Craigmiles to Hays of the land for these two years provided for the payment of one-third of the annual rent just after the wheat harvest of the year, and the residue at the end of the year, and added: "For the payment of which rent a lien is hereby expressly given on the present year's crop, and a lien on all the crops grown on the place." Craigmiles collected all of the first instalment of rent except $75, for which he recovered judgment before a justice. On April 18, 1880, he recovered another justice's judgment against Hays for $466.66, the residue of the rent for the first year. Shortly after the rendition of this judgment, to-wit, on April 30, 1880, Hays conveyed

46—VOL. 7.

his only remaining tract of land to the defendant Knox, in trust to secure certain specified creditors.

In this situation of affairs, Walter Craigmiles, on the 28th of August, 1880, filed the present bill, as the creditor of Hays by the two judgments of $75 and $466.66, by the rent note to fall due April 26, 1881, for $466.66, and by the note for $4,000, against Hays and certain tenants on the leased land, and against the trustee and beneficiaries under the assignment of April 30, 1880. The bill alleged that, on the day after the recovery of the larger judgment as above, the defendant Hays "hastily removed his live stock, consisting of horses and cattle of considerable value, to the State of Georgia," for the purpose of hindering and delaying complainant in the collection of his debts, and shortly afterwards, with the like fraudulent intent, made the trust assignment of April 30, 1880. The bill further charged that the assignment was also void because it reserved to the grantor a homestead out of the land conveyed, to be laid off by the trustee. The bill prayed an attachment of the estate of the defendant Hays upon these allegations, and of the growing crop on the leased land by virtue of the lien reserved thereon in the lease for the security of the rent. And the bill prayed that the trust assignment be set aside, and the property sought to be attached subjected to the satisfaction of the complainant's several demands. There was a prayer for such other and general relief as the complainant might be entitled to. Sometime after the filing of the bill, the complainant applied for permission to add a prayer for the foreclosure of the

trust assignment to Knox, if it was held to be valid, but the chancellor refused the application. Attachment as prayed was granted, and the process was issued, and levied on the property mentioned in the bill. The attachment was afterwards discharged by the chancellor, on motion of defendant Hays, except as to the growing crop to the extent of the rent note falling due April 26, 1881, and defendant was permitted to replevy the crop upon giving a bond to cover that debt. On final hearing, the chancellor limited the relief granted to this debt, though the recovery on the replevy bond, by oversight probably, is taken in favor of the judgment for the same amount of April 18, 1880. The bill in other respects was dismissed, and complainant appealed.

The chancellor's decree, so far as the complainant's relief is rested on the note for $4,000, is correct. For by his contract of the 26th of April, 1879, the complainant expressly agreed to take no step to collect said note within the two years thereafter, and he is bound by his stipulation. The decree is also correct so far as the relief is rested on the removal of the defendant's live stock, for the language of the charge is not equivalent to the words of the statute, "that he has removed, or is removing himself or his property from the State": Code, sec. 3455, sub-sec. 3. A person who wishes to secure the benefit of the extraordinary remedy of the attachment laws, must bring himself clearly within them. The decree is further correct in refusing to set aside the trust assignment of April 30, 1880. For, there is no evidence to

impeach the deed for fraud in fact, and the reservation of the homestead on its face does not make it fraudulent in law, for the obvious reason that the homestead is given by law and cannot be set apart by the grantor himself. He must wait until his creditors, by undertaking to subject it, give him the opportunity to have it allotted in the mode prescribed by law. The trust assignment, although the bill purports to make it an exhibit, is not in the record. The bill says that by the deed the laying off of the homestead is to be done by the trustee. But as the trustee can no more lay off the homestead than the grantor, the probability is that the deed simply makes it his duty to see that it is laid off according to law, whenever it becomes necessary. This would be unobjectionable.

But we see no reason why the complainant, by virtue of his judgments, may not, under the general prayer of his bill, upon the facts stated and proven, have a foreclosure of the trust assignment, and subject the surplus, if any, after paying the trust expenses and trust creditors who have not renounced it benefits, the trustee expressly, and the beneficiaries tacitly in a joint answer, having consented thereto: *Cloud* v. *Hamilton*, 3 Yer., 81. My brother judges have held that this may be done even against the wishes of the beneficiaries, reversing my decision as chancellor to the contrary: *Fulghum* v. *Cotton*, 3 Tenn. Ch., 296, reversed 6 Lea, 590. The complainant is also entitled to judgment on the rent note due in April, 1881, under the Code, sec. 4292. And to the relief given by the chancellor, with the modification

suggested above of the judgment on the replevin bond. His Honor erred in limiting the lien given by the lease on the growing crop to the rent of the particular year, but the point is probably of no importance in the events which have happened. If the complainant's debt should be paid by the sale of the land on which he has a lien therefor, it would be unnecessary to execute the decree in his favor in this case.

The decree below will be modified in accordance with this opinion. The complainant will pay the costs of this court, but may have a decree over against Hayes therefor, and a further order that he be repaid the costs out of the surplus of the trust property, if any, after paying the trust expenses and the debts. The costs below will be paid as directed by the chancellor.